# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 4:19-MJ-13-MSH |
| | : | |
| MIRANDA D L SMITH, | : | |
| | : | |
| Defendant. | : | |

_____

## ORDER

Defendant is charged with unlawfully opposing or resisting a government employee in the performance of their official duties by forcibly resisting lawful detention by a military police officer. Information 1, ECF No. 1 (citing 18 U.S.C. 111(a)(1)). On April 11, 2019, she filed a motion to suppress (ECF No. 9) alleging she was arrested in her home without a warrant and either her consent to enter the home or exigent circumstances being present to authorize the arresting officers' warrantless entry. Mot. to Suppress 1, ECF No. 9. The Government responded by asserting that Defendant's husband—and co-occupant of the home—gave officers his consent to enter the home and that sufficient exigent circumstances existed to authorize the officers' entrance of the home without a warrant to arrest Defendant. Resp. to Mot. to Suppress 7, ECF No. 11. The Court held a hearing on Defendant's motion on May 8, 2019.

## FINDINGS OF FACT

The evidence at the hearing establishes that on the evening of December 8, 2018, at approximately 10:00 p.m., Fort Benning police officers received a call alerting them to a

physical domestic incident at 113 A Butts St.—Defendants' home. Hr'g Tr. 10:28. Upon arriving at the residence, Lt. William Maynard and Officer Thomas Lynn observed Patrick Rush, who identified himself as Defendant's husband, bleeding significantly from his nose in front of the house. Hr'g Tr. 10:28. Mr. Rush, in response to the officers' inquiry, informed them he had been stricken in the face by his wife and that she was inside the marital home. Hr'g Tr. 10:28-29. Lt. Maynard testified that Mr. Rush said his wife was inside the home and that officers could "go get her" or words to that effect. Hr'g Tr. 10:30. There was no evidence at the hearing that Mr. Rush did not affirmatively consent to the officers' entry into his home. Officers considered the scene "active" and were told by neighbors that Defendant had been seen hitting her husband outside the home. Hr'g Tr. 10:29-30. When Lt. Maynard and others approached the home, Defendant refused to answer the door and turned on loud music. Hr'g Tr. 10:30.

Lt. William Maynard was convinced that someone was in the house and refusing to answer the door, so went to the rear of the home to see if he could identify exactly who was inside. Hr'g Tr. 10:30-31. From there, he saw the Defendant and assessed her as being in an "agitated state." Hr'g Tr. 10:31. Lt. Maynard then knocked on the home's rear door and Defendant answered. Hr'g Tr. 10:31. Defendant told officers to leave, and when Lt. Maynard told Defendant she needed to come with the officers, she withdrew into the home and forcibly resisted apprehension. Hr'g Tr. 10:31.

## DISCUSSION

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S.

573, 586 (1980). Indeed, unwarranted entry into the home is the "chief evil" which the Fourth Amendment is directed at combatting. *Id.* Accordingly, the Fourth Amendment "does not permit an officer to cross this constitutional line and forcibly remove a citizen from his home absent an exigency or consent." *McClish v. Nugent*, 483 F.3d 1231, 1242 (11th Cir. 2007).

The Eleventh Circuit has established five factors that indicate the presence of exigent circumstances justifying home invasion in order to make an arrest:

> 1) the gravity or violent nature of the offense with which the suspect is to be charged;
>
> 2) a reasonable belief that the suspect is armed;
>
> 3) probable cause to believe that the suspect committed the crime;
>
> 4) strong reason to believe that the suspect is in the premises being entered;
>
> 5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public.

*U. S. v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987). In applying these factors, courts consider whether "the facts known at the time would lead a reasonable, experienced agent to believe that exigent circumstances exist." *U. S. v. Burch*, 466 F. App'x 772, 774 (11th Cir. 2012) (citing *U.S. v. Reid*, 69 F.3d 1109, 1113 (11th Cir. 1995)). Whether relying on consent or the exigent circumstances exception, "an officer who conducts a warrantless search or seizure inside the home bears the burden of proving that his conduct was justified." *McClish*, 483 F.3d at 1241.

Here, The Court finds that the officers had the affirmative consent of Defendant's

husband to enter the marital residence he and she shared. Further, the Court finds that the officers' sole purpose in entering the home was to secure an active crime scene of domestic violence and detain Defendant, who Rush identified as his assailant. The officers did not search the home nor was anything taken from the home other than Defendant herself.

Defendant relies heavily on *Georgia v. Randolph*, 547 U.S. 103 (2006) in support of her motion to suppress, but that reliance is clearly misplaced. In *Randolph*, the majority opinion held that a co-tenant who was physically present in a home shared with another could refuse officers entry to the home without a search warrant—even if the other co-tenant gave permission. The *Randolph* court, however, specifically cautioned that its holding should not be read to "shield[] spousal abusers and other violent co-tenants who will refuse to allow police to enter a dwelling when their victims ask the police for help" and noted that "[n]o question has been raised, or reasonably could be, about the authority of police to enter a dwelling to protect a resident from domestic violence: so long as they have good reason to believe that such a threat exists." *Randolph*, 547 U.S. at 117-18.

Lt. Maynard had good reason to believe that Mr. Rush was the victim of a domestic assault, that Defendant was the abuser, and that she was in the home she and Mr. Rush shared. In making these findings of fact, the Court notes that after the hearing, Defendant filed an affidavit, purportedly executed by Mr. Rush, in which he confirms that he was assaulted by Defendant and that he identified her to the responding officers as his assailant. Suppl. Mot. to Suppress Attach. 1, ECF No. 12-1. Although he states that "at no point was I asked if the police officers could enter my residence nor did I ever give permission to any police officer to enter my residence" he did not appear at the hearing and testify under oath

to this assertion, nor has Defendant moved to reopen the hearing to permit him to do so. *Id*.

The Court also finds that exigent circumstances sufficient to authorize entry into the home to arrest Defendant were present when officers arrived at the crime scene. Officers were confronted with a bleeding victim who made an excited utterance about his injuries and described his then-existing physical condition as the result of an assault by Defendant. Domestic abuse is a violent offense which here resulted in facial injuries and bleeding. Hr'g Tr. 10:28-29, 10:33. Lt. Maynard testified that he was concerned that Defendant was inside the house with access to numerous instrumentalities which, though ordinary in nature, could be accessed and used to further the assault on the victim, officers or neighbors as well as the possibility of firearms being present. Hr'g Tr. 10:31, 10:34. He proceeded to enter only after Rush identified Defendant as the assailant and gave her location as inside the residence they shared. Delay to obtain an arrest warrant risked further assault on the victim or Defendant absconding, a conclusion reinforced by her resistance to detention and arrest. Thus, the five- factor test established by the Eleventh Circuit in *Standridge*, 810 are all clearly met and the Court concludes that the facts known to Lt. Maynard at the time would lead a reasonable and experienced officer to believe that exigent circumstances existed. *See Reid*, 69 F.3d at 1113.

Based on the totality of the circumstances and the facts known to the responding officers at the time of the domestic violence call, the Court finds that the officers had the valid consent of the victim—a co-tenant of the premises with Defendant—to enter the home and that the officers were also faced with exigent circumstances authorizing their

warrantless entry to arrest Defendant for assaulting her husband. Accordingly, Defendant's original and supplemental motions to suppress are denied.

## CONCLUSION

For the reasons explained above, Defendant's original and supplemental motions to suppress (ECF Nos. 9, 12) are denied.

SO ORDERED, this 28th day of May, 2019.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE